# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

WILLIAM MCKINNEY,

    Plaintiff,

v.

ROMEO ARANAS, *et al.*,

    Defendants.

Case No.: 2:12-cv-00401-KJD-GWF

**ORDER**

    Presently before the Court are two Motions to Dismiss or, Alternatively, Motions for Summary Judgment (#32, #36) filed by Romeo Aranas, *et al.* ("Defendants"). William McKinney ("Plaintiff") responded to both Motions within his Affidavit in Support of Opposition to Defendant's Motion to Dismiss, or in the Alternate, a Motion for Summary Judgment (#48). Although Plaintiff does not specifically refer to both motions in his response, the Court construes Plaintiff's filing liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotations omitted). Since the legal and factual questions are substantially similar in both of Defendants' motions the Court will address both  motions together.

I. Factual Background

    The following facts are undisputed. Plaintiff, a *pro se* litigant, is a prisoner in the custody of the Nevada Department of Corrections ("NDOC") (#32 at 3). NDOC employs the Nevada Inmate

Tracking Information System ("NOTIS") to track all inmate grievances in the Inmate Issue History Report. Both parties rely extensively on NOTIS in their allegations and defenses. Plaintiff alleges eight separate counts against Defendants who are employed at High Desert State Prison ("HDSP"). Id.

A. Count I

Plaintiff made an Eighth Amendment claim of deliberate indifference towards a serious medical need against Defendants Adams, Aranas, Jennings, and Neven for allegedly denying Plaintiff treatment for a ruptured cyst (#8 at 2:8-2:12). Plaintiff entered HDSP in 2009 complaining of several medical problems, including a cyst on the back of his head (#32 at 14). Plaintiff received treatment for his medical problems, including pain medication and a diabetic diet ( #36 at 11). In November of 2010, Defendant Aranas examined Plaintiff for his cyst complaint and diagnosed it as a "probable, benign, fatty tumor" (#36, Ex. A at 1). Four months later, Defendant Aranas met with Plaintiff and made the same diagnosis, noting that the cyst had not grown in size and advised Plaintiff that he could receive a medical referral to the Utilization Review Panel ("URP"). Id. During Plaintiff's April 2012 visit, Plaintiff again complained about the cyst (#36, Ex. A at 1). Defendant Aranas examined him, made the same diagnosis about the cyst, and prescribed pain medication. Id. During his last two visits, which occurred after the lawsuit began, Plaintiff has not complained about the cyst. Id.

Additionally, Plaintiff filed informal grievance # 20062911178 claiming that his cyst caused him substantial pain and requested surgery to remove it (#32 at 4). Although the date the grievance was submitted is in dispute, it is undisputed that Defendant Adams responded to his grievance (#32, Ex. C at 22). Defendant Adams advised him that he had already seen Defendant Aranas about the issue and denied Plaintiff's surgery request as cyst removal was a cosmetic procedure. Id. Plaintiff appealed his grievance to the first level and was advised by Defendant Jennings that a cyst is not life threatening and that removal of the cyst was a cosmetic surgery. Id. Plaintiff appealed to the second level of review, but was again denied surgery as the cyst was not life threatening. Id. Plaintiff was

also advised that he could request to be seen by the medical staff if his condition changed. Id.

Lastly, Plaintiff filed informal grievance #20062895041, but failed to appeal it past the informal level (#32, Ex. C-1 at 2). Plaintiff complained that he had not received adequate medical treatment. Id. In response, Defendant Adams detailed the numerous times that Plaintiff had seen the doctor in response to his medical requests (#32, Ex. C-1 at 3). Plaintiff did not appeal. Id.

B. Count II

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for depriving him of adequate exercise time out of his cell and outdoors due to prison overcrowding (#8 at 2:13-2:15). Plaintiff filed informal grievance #20062911175 complaining about discrimination because he had to move cells (#32, Ex. C at 23). NDOC policy required all prisoners housed in level one housing to work, and Plaintiff was no longer working. Id. Therefore, Plaintiff was moved to different housing. Id. Plaintiff appealed to the first level, but failed to appeal to the second level. Id.

C. Count III

Plaintiff made a Fourteenth Amendment equal protection claim against prison staff for allegedly serving lower quality food to Plaintiff and other inmates at HDSP than at other NDOC institutions because the majority of the inmates at HDSP were African-American (#8 at 2:16-2:21). Plaintiff filed informal grievance #20062888563 with the medical staff claiming that he had not received a diabetic diet (#32, Ex. C at 25). The medical staff responded in a timely manner, denying his grievance. Id. Plaintiff did not appeal. Later, Plaintiff filed informal grievance # 20062911168 complaining about the quality of the food (#32, Ex. C at 24). Inmate received a response about the type of food given to inmates and the preparation process for the food. Id. Plaintiff did not appeal. Id.

D. Count IV §4

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for allegedly forcing Plaintiff to eat next to showers that were seldom cleaned (#8 at 2:16-2:21). Neither party has produced any grievances related to this count that were filed before the commencement of this lawsuit. Id.

3

### E. Count IV §5

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for failing to provide Plaintiff with supplies to clean his sink and toilet (#8 at 3:7-3:8). Neither party has produced any grievances related to this count that were filed before the commencement of this lawsuit. Id.

### F. Count IV §6

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for forcing Plaintiff to eat food that caused him severe gastric distress (#8 at 3:7-3:8). Plaintiff filed informal grievance #20062911168 complaining about the quality of the food served and complaining that the food caused his hair to fall out, his nails to stop growing, and other unnamed medical issues (#32, Ex. C at 24). Plaintiff's grievance was denied, but he was informed that he should see the medical staff about his medical issues. Id. Plaintiff did not appeal this grievance. Id. Plaintiff also filed informal grievance #20062937090 claiming that in his diabetic meals he was served a sugary substance that caused his blood sugar to spike (#32, Ex. C at 19). The medical staff responded to his claims, explained the type of food in his meals, and explained that eating prior to testing his blood sugar could cause the spike in his blood sugar. Id. Plaintiff appealed to the first level, but his grievance was again denied on the same grounds. Id. Plaintiff did not appeal to the second level. Id.

### G. Count V §1

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for restricting Plaintiff to flushing his toilet at twenty minute intervals (#8 at 3:9-3:13). Neither party has produced any grievances related to this count that were filed before the commencement of this lawsuit. Id.

### H. Count V §3

Plaintiff made an Eighth Amendment claim for cruel and unusual punishment for providing inadequate ventilation in the cells, which caused Plaintiff to sweat profusely and to have a dry nose and mouth (#8 at 3:15-3:18). Neither party has produced any grievances related to this count that were filed before the commencement of this lawsuit. Id.

II. Legal Standards

At the outset, the Court notes that the recent Ninth Circuit case Albino v. Baca banned the use of unenumerated 12(b) motions to dismiss for failure to exhaust non-judicial remedies. 2014 WL 1217141, *1 (9th Cir. April 3, 2014). The Ninth Circuit noted that generally exhaustion defenses should be heard on a motion for summary judgment under FED. R. CIV. P. 56. Id. at *1. However, the Ninth Circuit also stated that the change "may be more a matter of a change of nomenclature than of practical operation." Id. Thus, the Court will resolve all the exhaustion defenses under a motion for summary judgment standard.

Also, the Court notes that Plaintiff is *pro se*, meaning that his submissions to the Court are "to be liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94. Accordingly, the Court will liberally construe Plaintiff's Response and hold it to a less stringent standard.

A. Motion for Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(C); see also Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual

issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarmo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248. However, [i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (internal citations omitted).

B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1994 ("PLRA") requires that a prisoner exhaust any and all administrative remedies before filing a case in federal court. See Woodford v. Ngo, 548 U.S. 81, 85 (2006); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding that compliance with [the PLRA] is not achieved by exhausting administrative remedies while the lawsuit is pending). "Proper exhaustion demands compliance with an agency's procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91.  The prisoner must follow the particular grievance process of the state where he is imprisoned.  Jones v. Bock, 549 U.S. 199 (2007).

The State of Nevada has given the NDOC the power to enact regulations to establish a grievance process for inmates. See Nev. Rev. Stat. § 209.243. In accordance with section 209.243, the NDOC has adopted Administrative Regulation 740 ("AR 740"), establishing a grievance process for resolution of inmate problems and concerns.

1   An inmate must complete three levels of review, two formal and one informal, to exhaust his
2   administrative remedies. See AR 740.05-740.07. An inmate must first file an "informal grievance"
3   and receive a response. AR 740.05. An inmate who is dissatisfied with the response may appeal the
4   grievance to the first level. AR 740.06. Once the inmate receives the response, the inmate may appeal
5   to the second level of review. AR 740.07. Once an inmate receives a response to his second level
6   grievance, he is considered to have exhausted available administrative remedies.

C. Deliberate Indifference to a Serious Medical Need

A prisoner asserting a claim for a denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th. Cir. 1992) overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Deliberate indifference occurs in one of two ways (1) when prison officials deny, delay or intentionally interfere with medical treatment, or (2) when prison medical staff deliberately ignore or fail to respond to the prisoner's pain or medical needs. Id. at 394; McGuckin, 974 F.2d at 1060.

A mere difference of opinion between an inmate and medical staff regarding appropriate medical treatment is generally insufficient to constitute deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th. Cir. 2004). To succeed on an Eighth Amendment claim against prison medical staff, the prisoner must show that the course of treatment was medically unacceptable under the circumstances and that the medical staff chose the treatment in conscious disregard of an excessive risk to the prisoner's health. Id.

D. Supervisory Liability

"Supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645–46 (9th Cir. 1989). "A supervisor may be liable only if he is personally involved in the constitutional deprivation or there is a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation." Id. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.

III. Discussion

Defendants argue that they should be granted summary judgment on all counts except for count I because Plaintiff failed to exhaust his administrative remedies. As to count I, Defendants argue, in part, that Plaintiff exhausted his administrative remedies. Defendants further argue that they were not deliberately indifferent to a serious medical need because prison officials did not deny, delay, or intentionally interfere with medical treatment and they provided timely, effective treatment.

A. Plaintiff Failed to Timely File Informal Grievances

To begin, Defendants assert as to counts IV §4, IV §5, V §1, and V §3 that a review of NOTIS conclusively demonstrates that Plaintiff never filed any grievances related to counts IV §4, IV §5, V §1, and V §3 prior to the commencement of this lawsuit (#32 at 10-12). In response, Plaintiff argues that he has been denied access to the grievance process. (#48 at 10).

Plaintiff has not filed any grievances in relation to counts IV §4, IV §5, V §1, and V §3 before the beginning of the lawsuit and Plaintiff has adequate access to the grievance process. There is no record that Plaintiff filed a grievance in relation to the conditions complained about in counts IV §4, IV §5, V §1, and V §3 before the commencement of the suit[1] (#32 at 11). Therefore, Defendants have met their initial burden of proof and it turns to Plaintiff to allege specific facts showing there is a genuine issue that should be resolved by trial. Plaintiff has not pointed to any grievances on the record filed previous to the commencement of this lawsuit, which relate to these counts. Instead, Plaintiff argues that he was denied access to the grievance process or that his grievances were thrown

---

[1]Plaintiff did file emergency grievances after the commencement of the suit that relate to these counts. However, the Supreme Court has held that proper exhaustion requires inmates to file all grievances and exhaust all administrative appeals *prior* to commencement of the lawsuit. See Woodford, 548 U.S. at 85.

8

in the garbage or shredded[2] (#48 at 10). However, this argument is unavailing. Plaintiff has filed many grievances with NDOC, both before and since the filing of his lawsuit (see #32, Ex. C). Further, Plaintiff argues that his grievances were thrown away or shredded and points to Assistant Warden Nash's ("Nash") declaration that there were missing pages in some of the exhibits as evidence to support his claim (#48 at 10). However, Plaintiff's argument fails because Nash's declaration is only referring to the original copies of the grievances reproduced in the exhibits. Nash also noted that complete versions of the grievances, complete with the alleged shredded pages, appear later in other exhibits (#32, Ex. A at 1-2). Even viewing the evidence in the light most favorable to Plaintiff, it is apparent that Plaintiff has not exhausted his administrative remedies because he has not filed any grievances relating to counts IV §4, IV §5, V §1, and V §3. Also, Plaintiff has regular access to the grievance process, which gives him the ability to exhaust his administrative remedies. Thus, there is no genuine issue of material fact as to counts IV §4, IV §5, V §1, and V §3.

B. Plaintiff Failed to Fully Appeal His Informal Grievances

Next, as to count I in part, and counts II, III, and IV §6, Plaintiff has failed to exhaust administrative remedies because Plaintiff failed to appeal his grievances through the three levels of review mandated by AR 740. Therefore, Plaintiff has not exhausted his administrative remedies.

First, as to count I, Plaintiff filed informal grievance #20062895041 claiming he received delayed treatment (#32, Ex. C-1 at 2-3). Defendant Adams responded to Plaintiff's complaint and Plaintiff failed to appeal to the first level. (#32, Ex. C-1 at 3).

Second, as to count II, Plaintiff filed informal grievance #20062911175, which is vague and only tangentially relates to Plaintiff's allegations (#32, Ex. C at 23). However, even if his grievance related to count II, Plaintiff failed to appeal his grievance past the first level. Id. Plaintiff did not file

---

[2] The Court notes that it is difficult, if not impossible, to tell if Plaintiff is responding specifically to Plaintiff's argument on Counts IV §4 and §5 or just making the argument as a general argument against summary judgment.

any other grievances relating to count II and Plaintiff has failed to provide any evidence of any other grievances related to count II. Id.

Third, as to count III, Plaintiff filed informal grievance #20062888563 claiming he was denied his medically prescribed diet (#32, Ex. C at 25). Plaintiff received a response. Id. However, Plaintiff never appealed this grievance to the first or second levels. Id. Additionally, Plaintiff filed related informal grievance # 20062911168, but he failed to appeal to the first or second levels (#32, Ex. C at 24).

Fourth, as to count IV §6, Plaintiff filed informal grievance #20062911168 and informal grievance #20062937090, which only vaguely relate to this count (#32, Ex. C at 19, 24). Liberally construing Plaintiff's submission, the Court will credit these grievances as to both counts III and IV §6. However, neither of these grievances were appealed to the second level (#32, Ex. C at 19, 24).

In each of these counts, Plaintiff has succeeded in filing grievances, however Plaintiff failed to properly go through the three levels of review to ensure that NDOC had the opportunity to address the grievances filed by Plaintiff. Plaintiff has not pointed to any facts which would support his case on this point. Thus, there is no genuine issue of material fact as to whether Defendant exhausted his administrative remedies as to count I and counts II, III, and IV §6. Plaintiff has failed to exhaust his administrative remedies.

C. Deliberate Indifference to a Serious Medical Need

Plaintiff alleges in count I that Defendants Adams, Aranas, Jennings, and Nevens violated his Eighth Amendment rights by deliberate indifference to a serious medical need (#8 at 2:8-2:12). Plaintiff alleges that he suffered from a variety of ailments when he arrived at HDSP and that the medical staff gave deficient care in treating him. Id. Plaintiff exhausted his administrative remedies. Therefore, the Court must determine whether there is a genuine issue of material fact regarding whether Defendants were deliberately indifferent to a serious medical need.

//

//

i. Defendant Jennings

Defendant Jennings is the Director of Nursing for HDSP. Plaintiff filed his first level appeal of grievance # 20062911178. He alleges that Defendant Jennings failed to determine whether his cyst could cause a life threatening illness (#32, Ex. C at 22). However, Plaintiff's grievance acknowledges that two physicians have classified his cyst as non-life threatening and Plaintiff only asks for a reconsideration of his diagnosis in the grievance. Id. Defendant Jennings responded by noting that a cyst is not life threatening and cyst removal was a cosmetic surgery. Id. Plaintiff has not alleged that Defendant Jennings delayed or interfered with his medical treatment and Plaintiff has not alleged that Defendant Jennings ignored or failed to respond to his medical needs. The grievance only indicates that there was a difference of opinion between Plaintiff and Defendant Jennings. Differences of opinion on the course of medical treatment does not constitute deliberate indifference to a serious medical need. See Toguchi, 391 F.3d at 1058.

    ii. Defendant Aranas

Defendant Aranas was a senior physician assigned to HDSP. Plaintiff alleges that Defendant Aranas was deliberately indifferent to a serious medical need because of the medical diagnosis and treatment of his cyst (#8 at 2:8-2:12). First, Defendant Aranas saw and treated Plaintiff multiple times for various ailments including his cyst (#36 at 11). In November 2010, Defendant Aranas diagnosed Plaintiff's cyst as a benign fatty tumor. Id. In March 2011, Aranas once again examined Plaintiff and advised Plaintiff that his cyst was likely a benign fatty tumor, but that Plaintiff could receive a medical referral to the URP. Id. During Plaintiff's visit in April 2012, Plaintiff complained about the cyst (#36, Ex. A at 1). Defendant Aranas examined him, made the same diagnosis about the cyst, and prescribed pain medication. Id. During his last two visits, which occurred after the lawsuit began, Plaintiff had not complained about the cyst on his head. Id. Plaintiff also claims that Defendant Aranas lied about the size of the cyst (#48 at 17). However, Defendant Aranas' affidavit stated that the cyst had essentially remained the same size and provided authenticated medical records supporting such a declaration (#36, Ex. A at 1). Plaintiff's mere allegation is not enough. Second,

1  Plaintiff claims that Defendant had failed to treat the pain resulting from his cyst (#48 at 17).
2  Plaintiff, by his own admission, had been given pain medication and stopped taking it when he had
3  additional pain in his kidneys. Id. Plaintiff has not alleged that Defendant Aranas delayed seeing him
4  or interfered with his medical treatment and Plaintiff has not alleged that Defendant Aranas ignored
5  or failed to respond to his medical needs. In fact, the record reflects that the medical staff responded
6  to and treated Plaintiff's medical needs. Plaintiff's grievance history amounts to a difference of
7  opinion on the course of his medical treatment, which cannot sustain a deliberate indifference claim.

       iii. Defendant Neven

9      "A supervisor is liable only if he is personally involved in the constitutional deprivation or [. .
10 .] if a supervisor [] implement[s] a policy so deficient that the policy itself is a repudiation of
11 constitutional rights and is the moving force of a constitutional violation." Hansen, 885 F.2d at
12 645–46.

13     Defendant Neven is Warden of HDSP. Plaintiff never alleges that Defendant Neven actually
14 participated in his medical treatment, instead arguing that he knew of Plaintiff's medical condition.
15 However, even if Defendant Neven knew of Plaintiff's medical condition, Plaintiff has not alleged
16 any wrongful conduct on the part of Defendant Neven in direct relation to his medical treatment.
17 Therefore, there is no evidence that Defendant Neven was personally involved in Plaintiff's medical
18 treatment. Further, Plaintiff has neither alleged nor set forth any facts about a policy so deficient as to
19 deprive Plaintiff of his constitutional rights. Therefore, there is no genuine dispute of material fact as
20 to whether Defendant Neven has either been involved in or created conditions for which
21 constitutional violations could occur in relation to Plaintiff's medical treatment.

       iv. Defendant Adams

23     Plaintiff alleges that Defendant Adams did not timely respond to a medical grievance and was
24 thus deliberately indifferent to his medical need (#48 at 5-6). Plaintiff alleges that he filed informal
25 grievance #2006291178 on January 4, 2010 and that Defendant Adams responded a year later to his
26 grievance simply by noting that Dr. Aranas had seen Plaintiff on November 10, 2010 (#48 at 10, #32

Ex. C at 22). Contrary to Plaintiff's allegations, Defendant claims that Plaintiff merely made a mistake in dating the grievance (#32 at 14). In support of Defendant's claim, Defendant argues that the date received stamp as being on January 7, 2011 and Inmate's Grievance History, which notes that the date the grievance was reported was also on January 7, 2011, are conclusive evidence of the date the grievance was filed (#32 Ex. C-2 at 2-3). However, such evidence is not conclusive. The evidence creates essentially a "he said, she said" situation. Because the facts are construed in favor of the non-moving party, Defendant Adams has not yet provided sufficient evidence to resolve the dispute about the date the grievance was received. Therefore, there is a question as to whether Plaintiff received delayed treatment and a genuine dispute exists as to whether Defendant Adams was deliberately indifferent to a serious medical need.

III. Conclusion

Defendants have met their burden in showing that no genuine issue of material fact exists in this case, except as to the count I claim against Defendant Adams. Therefore, Defendants' Second Motion to Dismiss or, Alternatively, Motion for Summary Judgment (#36) is **HEREBY GRANTED**. However, because there is a dispute regarding the date that Defendant Adams received informal grievance #20062911178, Defendants' First Motion to Dismiss or, Alternatively, Motion for Summary Judgment (#32) is **HEREBY GRANTED IN PART** and **DENIED IN PART** consistent with the above analysis.

DATED this 6th day of June 2014.

_____
Kent J. Dawson
United States District Judge

13